IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BENJAMIN KUNZE, ASHLEY AGURA, JACQUELINE BEELER, ALEXANDRA BEWLEY, VILASBEN BHUT, RYAN BIALASZEWSKI, NANCY CLOUD, RYAN ENGLISH, TASHA HUDSON, STEPHEN KRIVAN, TYLER LEMM, CINDY LIN, CHARITY MUGADZA, MICHELLE NICKELATTI, SANDEEP PALIKHEL, TAYLOR VAUGHN, KARA WILHITE AND KATIE ZILIAK, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, <br><br>PLAINTIFFS <br><br>V. <br><br>BAYLOR SCOTT & WHITE HEALTH AND HEALTHTEXAS PROVIDER NETWORK, <br><br>DEFENDANTS | § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:20-CV-01276-N |

**PLAINTIFFS' MOTION AND SUPPORTING BRIEF FOR CONDITIONAL CLASS CERTIFICATION AND AUTHORIZATION TO PROVIDE NOTICE TO POTENTIAL CLASS MEMBERS**

The Plaintiffs, on behalf of themselves and all others similarly situated (collectively the "Plaintiffs") file this Motion for Conditional Class Certification and Authorization to Provide Notice to Potential Class Members in this action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. In support of this Motion, Plaintiffs state as follows:

I.   **Background**

On May 15, 2020, a group of eighteen (18) initial named Plaintiffs filed their Original Complaint on behalf of themselves and all similarly situated employees under the FLSA. Plaintiffs and all similarly situated employees include all past and present Baylor Scott & White Health

1

(BSWH) and HealthTexas Provider Network (HTPN) physician assistants, nurse practitioners and other clinical nurse specialists, also known as Advanced Practice Providers (APPs), who were subjected to the same pay practices during the period beginning April 6, 2017 through the present. Plaintiffs filed a tolling agreement with the Original Complaint, which expanded the claim period to begin on April 6, 2017. *See* Original Complaint [Dkt. 1].

Plaintiffs allege that Defendants repeatedly and willfully violated and continue to willfully violate §207 of FLSA by failing to pay Plaintiffs for many of the hours worked in excess of forty (40) hours per week at a rate not less than one and one-half times the regular hourly rate at which Plaintiffs were and are compensated.

As alleged in Plaintiffs' Complaint and supported by the Declarations in the attached Appendix (Ap. 1-20)[1], the APPs have been subjected to improper pay deductions and unpaid off-the-clock work by BSWH and HTPN acting jointly as the employer (collectively "BSWH/HTPN"). *See* Ex. Ap. 1-2, 5-6, 9-10, 13-14, 17-18 at ¶¶ 4-6. BSWH operates hundreds of hospitals and clinics throughout the State of Texas. *See* Ap. 2, 6, 10, 14, 18 at ¶¶ 7 and 9. And HTPN provides APPs for those facilities. *See* Ap. 2, 6, 10, 14, 18 at ¶ 8. BSWH/HTPN in combination have employed hundreds of persons as APPs during the last three years. *See* Ap. 2, 6, 10, 14, 18 at ¶ 10. These APPs perform similar responsibilities to the named Plaintiffs and are paid similarly. *See* Ap. 2, 6, 10, 14, 18 at ¶ 14. During the last three years, BSWH/HTPN has maintained a policy and practice of deducting pay from the alleged salary of named Plaintiffs and the alleged salary of similarly situated APPs. *See* Ap. 2-3, 6-7, 10-11, 14-15 at ¶¶ 15, 17 and 18.

Specifically, when Plaintiffs and similarly situated APPs worked less than 40 hours in a week, they did not receive their full purported salary, but instead Defendants made deductions

---

[1] These are: Ap. 1-4 Declaration of Benjamin Kunze; Ap. 5-8 Declaration of Ryan English; Ap. 9-12 Declaration of Tasha Hudson; Ap. 13-16 Declaration of Kara Wilhite, and Ap. 17-20 Declaration of Nancy Cloud.

from Plaintiffs' alleged salary corresponding to the hours not worked. *See* Ap. 2, 6, 10, 14, 18 ¶ 16. These deductions were the result of a policy and practice that BSWH/HTPN had in place. *See* Ex. Ap. 2-3, 6-7, 10-11, 14-15 at ¶¶ 15, 17 and 18. As a result, the deductions were not isolated or inadvertent, but were numerous, ongoing over a span of many years, occurred at numerous BSWH/HTPN facilities and caused the named Plaintiffs and similarly situated APPs to lose compensation. *See* Ap. 3, 7, 11, 15, 19 at ¶¶ 19-20. Defendants attempted to correct the wrongful deductions, but in doing so did not pay appropriate overtime or for the unpaid off-the-clock work Plaintiffs and similarly situated APPs performed such as answering work related calls, pages, texts and emails, and completing other work related tasks on the computer with the knowledge of and for the benefit of BSWH/HTPN. *See* Appx. 3, 7, 11, 15, 19 at ¶¶ 21-22.

Despite the fact that the named Plaintiffs and similarly situated APPs were not paid on a salary basis and worked off-the-clock hours without any pay, BSWH/HTPN did not pay them overtime pay for hours worked over 40 in a week during the last three years and to the present time. *See* Ap. 3, 7, 11, 15, 19 at ¶ 23. In sum, during the last three years, the named Plaintiffs and similarly situated APPs regularly worked in excess of forty (40) hours in a workweek for BSWH/HTPN, were not paid overtime wages for their overtime work and were not paid at all for their off-the-clock work as a result of which they have incurred substantial damages. *See* Ap. 3, 7, 11, 15, 19 at ¶ 24. Moreover, the declarants personally know of many APPs working for BSWH/HTPN who are similarly situated to the named Plaintiffs by job category and pay practices who would be interested in joining this lawsuit and seeking compensation for their underpaid and unpaid hours of work if they were made aware of this lawsuit and had the opportunity to join it. *See* Ap. 3, 7, 11, 15, 19 at ¶ 25.

As demonstrated above, Plaintiffs have alleged and the attached Declarations support, the following: Defendants made improper pay deductions which were not isolated or inadvertent, but

were implemented as a policy and practice of Defendants; Defendants' pay deductions violated the salary basis requirements for salaried-exempt employees; named Plaintiffs and similarly situated APPs were thereby made non-exempt and eligible for overtime pay which they did not receive. *See* Dkt. 1 and Ap. 1-20.

Accordingly, Plaintiffs seek to recover compensation for their unpaid overtime hours, including off-the-clock overtime work, at one and one-half times their regular hourly rate of pay, plus liquidated damages, reasonable attorneys' fees, costs, and any other relief deemed necessary and proper by this Court. In this Motion, Plaintiffs seek an order conditionally certifying this case as a collective action and authorization to provide notice to potential class members of their right to participate in the case including by first class mail, e-mail, text message, and also by posting a notice in all workplaces where APPs are employed.

## II.     Argument and Analysis

The FLSA mandates that a collective action "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). An employee may participate in the collective action if "he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." *Id.*

A court has the authority to facilitate timely notice in FLSA collective action litigation if it finds there are other employees who may desire to opt in and who are similarly situated with respect to job requirements and pay provisions. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168–69 (1989); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) (first step of collective FLSA actions requires plaintiffs to show that there are similarly situated employees who are potential claimants). When plaintiffs make this initial showing, a court may then order "pretrial conditional certification," which allows notice of the case to be sent to similarly situated

employees, who then can opt in and join the action as plaintiffs. *Heckler*, 502 F.Supp.2d at 779.

The Court's facilitation of notice to potential opt-in plaintiffs serves "the broad remedial purpose of the Act [FLSA]." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991) (quoting *Braunstein v. Eastern Photographic Lab., Inc*., 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979)); *Boyd v. Jupiter Aluminum Corp*., No. 2:05-CV-227PPSAPR, 2006 WL 1518987, at *3 (N.D. Ind. May 31, 2006); *see also, Hoffman-LaRoche*, 493 U.S. at 170 ("[a] collective action allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources"). Court facilitation of a Section 216(b) collective action also serves the equally important judicial interest of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche*, 493 U.S. at 170; *see also Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 553 (N.D. Ill. 2008) (noting the importance of early judicial management in FLSA collective actions). Additionally, participation by a court in the notification process protects against "misleading communications" by the parties, resolves parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, and expedites resolution of the dispute. *Garner v. G.D. Searle Pharm. & Co*., 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Heckler*, 502 F.Supp.2d at 780. Notice also serves the critical function of advising potential claimants to file their consents pursuant to §216(b) before the running of the applicable FLSA statute of limitations.

This Circuit has adopted a two-step approach for determining whether certification of a collective action is appropriate. *See, e.g., Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 915 (5th Cir. 2008); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824 (N.D. Tex. 2007); *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005). In the first step, known as the "notice stage" or "conditional

certification stage," the trial court determines whether notice of the action should be given to potential opt-in plaintiffs and whether the case should initially proceed as a collective action. *Mooney*, 54 F.3d at 1214. If conditional certification is granted, the action then proceeds as a representative action throughout discovery. *Id.* In the second step, which comes after discovery, the trial court determines, typically at the behest of a defendant, whether the case should proceed as a collective action or should be decertified. *Id.*

At the conditional certification stage, plaintiffs need only make a modest factual showing, based on the pleadings, affidavits, and other available evidence, that potential class members are similarly situated to the named plaintiffs. *Id.* Some courts in this Circuit have granted conditional certification based only on allegations in the complaint. *See Neagley v. Atacosa Cty. EMS*, No. CIV. A. SA04CA0893XR, 2005 WL 354085, at *4 (W.D. Tex. January 7, 2005). The Supreme Court stated in *Sperling* that the collective action plaintiffs are similarly situated if they share "common issues of law and fact arising from the same alleged [prohibited] activity." *Hoffmann-La Roche*, 493 U.S. at 170. Because a motion for conditional certification is usually filed and granted before discovery, and in anticipation of later discovery, a movant bears a light burden in substantiating its claim that the potential class members are similarly situated and courts generally do not evaluate the merits of claims or make credibility determinations at this stage. *See, e.g., Ryan*, 497 F. Supp. 2d at 825; *Clarke*, 370 F. Supp. 2d at 605–06; *Salinas-Rodriguez v. Alpha Services, LLC*, No. AVN, 2005 WL 3557178, at *3 (S.D. Miss. 2005). Because no discovery has been conducted in this case, a lenient standard applies. Most courts have held that this lenient standard "requir[es] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). *See also Ryan*, 497 F. Supp. 2d at 825.

Regarding the trial court's involvement in the notice process, the Supreme Court in

*Sperling* stated that "in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Sperling*, 493 U.S. at 171. The benefits that the court's authorization of notice provides include "avoiding a multiplicity of duplicative suits … setting cutoff dates to expedite disposition of the action," and employees "receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170, 172.

Plaintiffs respectfully move for conditional certification of a class consisting of all past or present employees of Defendants BSWH and/or HTPN who work or worked as APPs at any time from April 6, 2017 to the present and who were subjected to similar pay practices as the named Plaintiffs. The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, however, a three-year limitations period is applied for "a cause of action arising out of a willful violation." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (citing 20 U.S.C. § 255(a)). Because Plaintiffs allege willful violations of the FLSA, this Court should approve a three-year limitations period in defining the scope of the collective action and notice. *Barry v. United States*, 117 Fed. Cl. 518, 521 (2014).

Plaintiffs have met the lenient standard applicable at this stage for notice to the limited class of APPs who work or worked for the Defendants during the relevant period of time. Plaintiffs also reserve their right to move to expand the class definition if further information becomes available that warrants such an expansion. Notice provided by first class mail, email, text message, and by posting, has been approved by other courts. *See, e.g., Martin v. Sprint/united Mgmt. Co.*, 2016 WL 30334, at *20 (S.D.N.Y. Jan. 4, 2016).

### III.   Defendants Should Provide Information Necessary to Effectuate Notice

Plaintiffs ask the Court to order Defendants to provide Plaintiffs' counsel with the last

known physical addresses, cell phone numbers, and email addresses of the class members in order to assist with the issuance of the notice, and to provide Plaintiffs' counsel with the dates of birth and partial social security numbers for any class members whose mailed notice is returned by the post office. The dates of birth and partial Social Security numbers can assist with locating the correct address for those workers so that they receive notice. *Davis v. Abercrombie & Fitch Co.*, 08 Civ. 1859(PKC), 2008 WL 4702840, at *12 (S.D.N.Y. Oct. 23, 2008); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371–72 (S.D.N.Y. 2007). Plaintiffs further request that this Court allow their counsel to send a follow-up postcard, text message, and email to any class members who have not responded by thirty (30) days after the initial notice is sent. Follow-up notice contributes to dissemination among similarly situated employees and serves what the Supreme Court in *Sperling* recognizes as Section 216(b)'s "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. at 172. Accordingly, courts have approved sending a follow-up notice to class members who have not responded after the initial notice. *See, e.g., Helton v. Factor 5, Inc.*, C 10–04927 SBA, 2012 WL 2428219, at *6 (N.D. Cal. June 26, 2012); *Graham v. Overland Sols., Inc.*, 10–CV–672 BEN (BLM), 2011 WL 1769737, *4 (S.D. Cal. May 9, 2011).

      Plaintiffs also request that the Court order Defendants to post the notice in all workplaces where APPs are employed, in the same areas in which Defendants are required to post FLSA notices. *See* 29 C.F.R. § 516.4 (requiring posting of FLSA requirements "in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy"). Posting of notice also contributes to dissemination among similarly situated employees and serves Section 216(b)'s goal of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Sperling*, 493 U.S. at 172. District Courts around the country have recognized posting as an efficient, non-burdensome method of notice that courts

regularly employ. *See Castillo v. P & R Enters., Inc.*, 517 F. Supp. 2d 440, 449 (D.D.C. 2007) (ordering notice posted in "(1) Defendant's offices, or (2) office spaces designated for Defendant's use in third-party buildings"); *Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (allowing notice to be posted at defendant's places of business for 90 days and mailed to all class members); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492–93 (E.D. Cal. 2006) (finding that posting of notice in workplace and mailing is appropriate and not punitive); *Veliz v. Cintas Corp.*, 03 Civ. 1180, 2004 WL 2623909, at *3 (N.D. Cal. Nov. 12, 2004) (citing Court order to post notice in all workplaces where similarly situated persons are employed); *Garza v. Chi. Transit Auth.*, 00 Civ. 0438, 2001 WL 503036, at *4 (N.D. Ill. May 8, 2001) (ordering defendant to post notice in all its terminals*); Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding that sending notice by mail, "posting on company bulletin boards at flight bases and publishing the notice without comment in American's The Flight Deck, are both reasonable and in accordance with prior authority*"); Frank v. Capital Cities Commc'ns, Inc.*, 88 F.R.D. 674, 679 (S.D.N.Y. 1981) (requiring defendant to "permit the posting of copies of public bulletin boards at FP offices"); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 531–32 (S.D.N.Y. 1980) (authorizing plaintiffs to "post and mail the proposed Notice of Pendency of Action and Consent to Sue forms").

  **IV.**  **Plaintiffs' Proposed Notice Should Be Approved**

  A copy of Plaintiffs' proposed notice to post and send by first class mail and email to class members is attached in the Appendix at 21-23. This notice informs class members in neutral language of the nature of the action, of their right to participate in it by completing and filing a "Consent to Join Collective Action" form with the Court, and the consequences of their joining or not joining the action. Plaintiffs propose to send the following text message to class members: "If you have worked as an Advanced Practice Provider, including as a physician assistant, nurse

9

practitioner or other clinical nurse specialist for Baylor Scott & White Health and/or HealthTexas Provider Network at any time since April 6, 2017, you may be entitled to join a lawsuit claiming back pay and overtime pay. For additional information about the case, including how to join, visit APPwageclaims.com." The proposed website will contain the information in the proposed notice, and a downloadable version of the Consent to Join Collective Action form that is attached in the Appendix at 24-25. In addition, Plaintiffs request a 90-day opt-in period, a common opt-in period in FLSA collective actions. *See, e.g., Arceo v. Orta*, 296 F. Supp. 3d 818, 826 (N.D. Tex. 2017); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 804 (E.D. La. 2007).

WHEREFORE, having shown good cause, Plaintiffs, on behalf of themselves and all other similarly situated nurse practitioners and physician assistants, respectfully request this Court to issue an Order that: (1) conditionally certifies a class of all past or present employees of Defendants who work or worked as APPs (physician assistants, nurse practitioners and other clinical nurse specialists) for Defendants BSWH and/or HTPN at any time from April 6, 2017 until the present; (2) directs Defendants to produce to Plaintiffs' counsel within twenty (20) days of the Order a list containing the names, last known physical addresses, email addresses, and cell phone numbers of all employees who meet the class definition; (3) authorizes Plaintiffs' counsel to send a notice, in the form attached in the Appendix at 21-23, by first class mail and email to all individuals whose names appear on the list produced by Defendants' counsel; (4) authorizes Plaintiffs' counsel to provide notice by text message to all individuals whose names appear on the list produced by Defendants' counsel in the form described in this motion; (5) directs Defendants to post the notice at all of Defendants' worksites; (6) authorizes Plaintiffs' counsel to provide all individuals whose names appear on the list produced by Defendants' counsel a Consent to Join Collective Action, in the form attached in the Appendix at 24-25; and (7) directs Defendants to provide Plaintiffs' counsel, within one week of a request from Plaintiffs' counsel, the dates of birth and partial Social

Security numbers for any class members whose mailed notice is returned by the post office.

Dated July 22, 2020.

>Respectfully submitted,
>
>  /s/ **John R. Fabry**
>**John R. Fabry**
>Texas State Bar No. 06768480
>JFabry@carlsonattorneys.com
>**THE CARLSON LAW FIRM, P.C.**
>1717 N. Interstate 35, Suite 305
>Round Rock, Texas 78664
>Phone: 512.671.7277
>Fax: 512.238.0275
>
>**David L. Kern**
>Texas State Bar No. 11334450
>dkern@kernlawfirm.com
>**KERN LAW FIRM, P.C.**
>1541 North Mesa, Suite 541
>El Paso, Texas 79902
>Phone: 915.542.1900
>Fax: 915.242.0000
>
>*Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the parties conferred regarding this motion by telephone on July 20, 2020. The motion is opposed. David Kern and John Fabry, on behalf of Plaintiffs, and Heather Sherrod, on behalf of Defendants, participated in the conference. Defendants' position remains, as stated in various ways in their Answer [Dkt. 4], that this matter is not appropriate as a collective action.

>  /s/John R. Fabry
>**John R. Fabry**

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 22, 2020, a copy of the foregoing with exhibits was filed electronically and served electronically to all parties by operation of the Court's electronic filing system.

   /s/John R. Fabry
**John R. Fabry**