IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BENJAMIN KUNZE, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> BAYLOR SCOTT & WHITE HEALTH, § <br> *et. al.*, § <br> § <br> Defendants. § | Civil Action No. 3:20-CV-01276-N |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs' motion for corrective notice and related relief [34]. For the following reasons, the Court denies the motion.

### I. ORIGINS OF THE MOTION

The Plaintiffs in this case are medical professionals called Advanced Practice Providers ("APPs"). Plaintiffs filed this collective action against Defendants Baylor Scott and White Health ("BSWH") and HealthTexas Provider Network ("HTPN) to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq*. According to Plaintiffs, Defendants' managerial employees have "improperly frustrated the Court-supervised notice process, influencing potential Class Members not to opt into this lawsuit, and placing them in fear of retaliation if they choose to do so." Pls.' Mot. for Corrective Notice 2. Plaintiffs claim Defendants, through at least two specific managers, informed potential class members that this action does not apply to them, that they should ignore the notice they received, and that the lawsuit is not worth

MEMORANDUM OPINION AND ORDER – PAGE 1

pursuing. *Id.* Plaintiffs filed this motion seeking a corrective notice, the reopening of the opt-in period, and an order limiting communications between Defendants and the APPs.

## II. THE COURT HAS DISCRETION TO CONTROL PARTIES IN A FLSA COLLECTIVE ACTION

Section 216(b) of FLSA allows an individual employee or group of employees to sue "any employer . . . for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Only those employees who have provided express written consent to join the suit may comprise a class under FLSA. This "opt-in" approach distinguishes FLSA class actions from those pursued under Federal Rule of Civil Procedure 23's "opt-out" method. *See* FED. R. CIV. P. 23; *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975). District Courts have authority to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hofmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). This authority encompasses managing communications between parties and class members and absent class members. *Belt v. EmCare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003).

A communication with absent class members that is "misleading, coercive, or an improper attempt to undermine [the collective action] by encouraging class members not to join the suit" warrants a Court order limiting communications between parties and absent

MEMORANDUM OPINION AND ORDER – PAGE 2

class members.  *Id.* at 667.  However, although "the Court has broad authority to manage the collective action, the First Amendment requires the Court to . . . base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for [such] a limitation."  *Id.*

"In the Fifth Circuit, district courts have applied a two-part test for determining whether to issue an order impacting a party's speech with absent class members."  *Williams v. Sake Hibachi Sushi & Bar, Inc.*, 2018 WL 4539114, at *2 (N.D. Tex. Sept. 21, 2018).  First, district courts determine whether there is a need for a restriction on speech due to speech by a party that is "misleading, coercive, or an attempt to undermine the collective action."  *Id.* (quoting *Vogt v. Tex. Instruments Inc.*, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 6, 2006)).  If a need for a restriction of speech exists, the court then tailors an injunction considering First Amendment limitations.  *Id.*

### III. THE COURT DENIES THE MOTION FOR CORRECTIVE NOTICE

#### A. The Court Declines to Order Specific Restrictions on Defendants' Communications with Plaintiffs and Potential Class Members

The details in the record are insufficient to warrant an order placing limits on the communications between the parties.  In support of their motion, Plaintiffs submit three affidavits of current class members describing various communications from Defendants allegedly discouraging Plaintiffs and potential class members from taking legal action.  Decl. of Benjamin Kunze [35]; Decl. of Ryan English [35]; Decl. of Daniel Krivan [35].

While the conduct described in the affidavits is concerning, the affidavits do not contain sufficient detail to warrant the extraordinary relief requested.

   1. ***Defendants' Expressed Confidence in Their Classification of APPs Is Insufficient to Warrant Relief.*** – Plaintiffs' affidavits include various allegations that Defendants' managerial employees discouraged participation in this lawsuit by stating Defendants' confidence in their classification of APPs and their legal position generally. Plaintiffs point to an allegedly misleading information packet about Defendants' payroll audit and a meeting where Defendants' managers allegedly told APPs "they believed [the APPs] were properly classified as exempt" and any potential litigation recovery would be captured by the payroll audit. Decl. of Benjamin Kunze ¶¶ 13–20. Plaintiff Daniel Krivan also alleges he "personally observed many instances of BSWH/HTPN managers telling APPs, including [him], that [they] should not pursue this case because 'HTPN feels they have a very strong case' to defend against the lawsuit." Decl. of Daniel Krivan ¶ 13. Daniel Krivan identifies two specific managers, Cathy Raver and Jami McKinney, who allegedly made these statements to APPs, and both Raver and McKinney submitted affidavits denying these allegations. *Id.* ¶ 15; Decl. of Catherine Raver [43]; Decl. of Jami McKinney [43].

   On balance, these statements are not so misleading or coercive that they justify Court intervention in communications between Defendants and the APPs. As discussed at length in this Court's previous Order denying equitable tolling of the statute of limitations for potential class members, statements indicating an employer's opinion that an employee has been paid correctly are not misleading. Mem. Op. and Order [61]. That Order

MEMORANDUM OPINION AND ORDER – PAGE 4

explicitly determined that the information packet Defendants sent to APPs, which Plaintiffs also rely on here, was not actively misleading for this reason. *Id.* The comments Defendants' managers allegedly made to APPs contain the same information: Defendants' belief that their payroll audit would make Plaintiffs whole. The affidavits also do not contain enough details for the Court to distinguish between these communications and the vague, secondhand allegations that "some potential class members . . . were told by . . . managers that the suit did not apply to them and they should not join the case because they are salaried employees." Decl. of Benjamin Kunze ¶ 7.

The allegations of statements by Defendants' employees explicitly telling potential plaintiffs not to join the lawsuit are more troubling as they may constitute an "attempt to undermine the collective action." *Williams*, 2018 WL 4539114, at *2. However, the only such statements alleged in the affidavits personally observed by the affiants were made in the context of expressing confidence that the APPs had been paid correctly. Thus, the information packet and statements about Defendants' perceived confidence in their legal position and classification of APPs are insufficient to justify wading into the First Amendment problems implicated by limiting communications between Defendants and the APPs.

   *2. The Affidavits Fail to Identify Deterred Individuals or State Specific Facts Showing Coercion or Threats of Retaliation.* – Importantly, Plaintiffs submit only affidavits of individuals who joined this lawsuit. The affidavits do not otherwise identify individuals who were in fact prevented from joining the lawsuit or feared retaliation for

participating. Nor do the affidavits allege specific acts of Defendants that were coercive or threatened any kind of retaliation for joining the class.

Plaintiff Benjamin Kunze claims that when he questioned signing a form accepting the payment amount from the audit, his managers told him to "just sign it" because the amount was "about what [he] would get if [he] won a legal suit anyway." Decl. of Benjamin Kunze ¶ 21. These statements are possibly coercive, but the substance of the statements still largely amounts to Defendants' expression that the audit payments would be correct, as discussed above. Plaintiffs do not allege any threats or other behavior accompanying the encouragement to accept the audit payments to turn an opinion that the audit is correct into an act of coercion or a threat.

Plaintiffs claim the APPs who were deterred from joining the class wish to remain unidentified because they fear retaliation from Defendants. Decl. of Daniel Krivan ¶ 10 ("My APP co-workers . . . asked me to communicate about our pay concerns . . . so [they] could remain anonymous because they feared retaliation . . . ."); Decl. of Benjamin Kunze ¶ 26 ("I believe these potential plaintiffs are also fearful of retaliation . . . .). Those individuals were unwilling to submit anonymous affidavits or identify the specific supervisors or conversations that caused them to fear retaliation. Decl. of Ryan English ¶ 12. The affidavits are devoid of any allegations of specific conduct suggesting Defendants threatened retaliation. Additionally, Defendants claim multiple reporting mechanisms are available for their employees, but no employee has reported these concerns internally. Decl. of Nina Kern ¶¶ 4, 9–10 [43]. Defendants also circulated a memorandum to potential plaintiffs indicating that "no disciplinary action or retaliation would be taken

MEMORANDUM OPINION AND ORDER – PAGE 6

against any APP who elected to join or otherwise participate in the lawsuit." *Id.* ¶ 5; Defs.' Ex. A-2 [43]. The same memorandum identified several mechanisms available to report incidents of retaliation for actual or potential participation. Defs.' Ex. A-2. Considered in the context of the entire record, Plaintiffs' affidavits do not allow the Court to make specific findings that communication limitations are necessary due to Defendants placing potential class members in fear of retaliation.

The Court recognizes this is a close case. Plaintiffs' affidavits plausibly allege a concerning pattern of behavior on the part of Defendants that may discourage full class participation in this case, but the affidavits rely heavily on secondhand accounts and contain little detail beyond Defendants' expressed confidence in their classification of APPs and the payroll audit. Because the opt-in period is already closed at this stage of the case, the Court determines that the record is insufficiently detailed to call for an order placing limits on party communications here. The Court reaches this result due to the posture of the case and the First Amendment concerns implicated by the requested relief, and this Order should not be read as an endorsement of the conduct alleged in Plaintiffs' affidavits.

### B. The Court Declines to Issue a Corrective Notice or Reopen the Opt-In Period

The corrective notice and additional opt-in period requested by Plaintiffs would also be inappropriate at this stage in the litigation, as both the opt-in period and previously extended class discovery period have already closed. *See* Order [51]. Additionally, recent Fifth Circuit precedent counsels against issuing a corrective notice, because the Fifth

Circuit has rejected the analysis underlying this Court's order authorizing notice in this case. *Swales v. KLLM Transportation Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

In *Swales*, the Fifth Circuit rejected the lenient *Lusardi* two-step test this Court used in granting conditional certification, because courts applying that test waited too long to scrutinize a collective action's compliance with FLSA's "similarly situated" requirement. *Id.* at 440–41; *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). After *Swales*, "FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of the litigation" *before* sending notice to potential class members at all. *Swales*, 985 F.3d at 443. Only after this rigorous analysis can a district court determine whether notices will go to those who are actually similar to the named plaintiffs. *Id.* at 434. The Fifth Circuit warned that sending notice without first rigorously conducting the "similarly situated" analysis risks "crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool." *Id.* at 442.

Because the Court relied on *Lusardi* in granting conditional class certification and authorizing the notices already sent in this case, the pool of potential class members receiving a corrective notice may be too large under the law of this circuit. The Court declines to compound the problem by issuing an additional notice without the information necessary to ensure that, as required by the Fifth Circuit, those notices are sent only to individuals who are in fact similarly situated to the named plaintiffs.

## Conclusion

The Court acknowledges the seriousness of employers deterring employees from pursuing their rights under FLSA and reminds Defendants of their obligation not to do so.

MEMORANDUM OPINION AND ORDER – PAGE 8

However, given the current posture of this case and the Fifth Circuit's decision in *Swales v. KLLM*, the Court determines that granting the relief Plaintiffs request would be inappropriate. Accordingly, the Court denies the motion for corrective notice and related relief.

Signed October 27, 2021.

                                                   David C. Godbey
                                                   United States District Judge